**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ACE USA and ACE EUROPEAN GROUP** ) | |
| **LIMITED, as Subrogee of AG SODA** ) | |
| **CORPORATION, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No: 09-2194 KHV/DJW** |
| ) | |
| **UNION PACIFIC RAILROAD COMPANY,** ) | |
| **INC.,** ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Union Pacific Railroad Company's Second Motion to Compel Discovery (ECF No. 91). The parties advised the Court that the issues regarding the documents initially addressed in the Motion are moot except with regard to five (5) document redactions from adjuster reports and six (6) e-mail redactions. The motion is denied in part and granted in part.

**I.      Background Facts**

This is a subrogation action brought by Plaintiffs ACE USA and ACE European Group Limited (collectively, "ACE" or "Plaintiffs"), as subrogees of AG Soda Corporation, Inc. ("AG Soda") against Defendant Union Pacific Railroad Company ("UP" or "Defendant"). Plaintiffs seek monetary damages stemming from a railcar accident which occurred while Defendant was transporting AG Soda goods. Plaintiffs claim the accident occurred while the goods were in Defendant's possession. Plaintiffs further claim that Defendant is strictly liable to Plaintiffs for

damages incurred under the Carmack Amendment, which governs the liability of rail carriers for damage to goods in transit.

During the course of discovery in this litigation, ACE provided privilege logs identifying information being withheld due to claims of exemption under the attorney-client privilege and the work product doctrine. All of the documents at issue were produced to UP, but excluded certain redacted information. The redactions at issue can be categorized into two groups: (1) reports that James Ratcliff[1] authored and sent to ACE employee Adrienne Benzoni, and (2) internal e-mail communications between representatives of ACE USA and ACE Europe. In the motion before the Court, UP challenges the basis for withholding this information.

Plaintiffs volunteered to produce the documents to the Court for an *in camera* review.[2] Defendant agreed the *in camera* inspection was warranted.[3] The Court ordered such a review[4] and analyzed the documents with respect to the parties' arguments.

## II.    Parties' Arguments

In Defendant's opening brief, it is requested that the Court overrule *all* of Plaintiffs' claims of privilege and order Plaintiffs to produce complete copies of all responsive documents, specifically

---

[1]Plaintiffs' adjustor from Ratcliff Property Adjusting; hired to investigate the insurance claims regarding the 96-car trainload of soda ash that was inundated by flood waters, among various other roles. *See* Def.'s Memo. In Supp. Of Def. UP Co.'s Second Mot. To Compel Discovery, (ECF No. 92) at pgs. 2-3.

[2]Plfs.' Response In Opp. To Def.'s Second Mot. To Compel, (ECF No. 99) at pg. 8.

[3]Reply In Supp. Of Def. UP's Second Mot. To Compel Discovery, (ECF No. 103) at pg. 4.

[4]*See* Memorandum & Order, (ECF No. 118).

referring to documents listed on ACE's privilege logs.[5]  Yet, throughout the remainder of the briefing the parties advise the Court that all issues regarding documents initially addressed are moot with the exception of withholding information on five (5) adjuster reports and six (6) e-mails, all of which appear on Plaintiffs' privilege logs of redacted documents.[6]  As claimed in the privilege logs and defended in Plaintiffs' response, Plaintiffs contend that all eleven (11) documents are entitled to protection under both the attorney-client privilege and the work product doctrine.

However, Defendant UP argues that Plaintiffs "cannot carry their burden of establishing" that the attorney-client privilege or work product doctrine apply to the documents at issue.[7]  UP points out that many of the allegedly privileged documents do not include providers or recipients that are attorneys or intermediaries for an attorney relaying legal advice.[8]  Additionally, UP contends that an inadvertently produced unredacted version of a redacted document does not qualify as privileged or work product and; thus, gives cause for heightened speculation and scrutiny with regard to the remaining documents listed on ACE's privilege logs.[9]  With regard to work product specifically, Defendant UP contends that business reasons, not the anticipation of litigation, drove

---

[5]*See* Memo. In Supp. Of Def. UP's Second Mot. To Compel Discovery, (ECF No. 92) at pg. 10, Ex. A & B.

[6]*See* Plfs.' Response In Opp. To Def.'s Second Mot. To Compel, (ECF No. 99) at pg. 2; *see also* Reply In Supp. Of Def. UP's Second Mot. To Compel Discovery, (ECF No. 103).

[7]Def.'s Memo. In Supp. Of Def. UP Co.'s Second Mot. To Compel Discovery, (ECF No. 92) at pgs. 6 & 9.

[8]*Id*. at pg. 6.

[9]*Id*. at pg. 7.

ACE to create these documents in the first place and; therefore, the redacted information in the documents is not protected by this doctrine.[10]

Plaintiffs respond that these redactions "go to, contain and/or address legal theories, strategy, planning and/or actions directly related to Plaintiffs' recovery efforts against Defendant."[11]  Thus, Plaintiffs maintain the redactions are properly withheld.  Plaintiffs then detail their reasons for withholding each of the eleven documents at issue.  But in general, contend that "from the date of loss, all actions taken by or on behalf of the insured (AGC), Plaintiffs, along with Plaintiffs' adjuster and legal counsel, for the purpose of recovering costs associated with the replacement and remediation of the damaged ash, were taken with the reasonable expectation of litigation with Defendant."[12]  Essentially, Plaintiffs argue every document created since the railcar flooding was prepared because of litigation and should be properly withheld due to the work product doctrine.

## III.     Applicable Law

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."[13]  It is well-established that attorney-client privileged information and work product created during the imminent prospect of litigation are exceptions to the broad sweeping rule that parties are entitled to relevant discovery.  The party asserting claims of protection under the attorney-client privilege or the work

---

[10]*Id*. at. pg. 9.

[11]Plfs.' Response In Opp. To Def.'s Second Mot. To Compel, (ECF No. 99) at pg. 2.

[12]*Id*. at pg. 4.

[13]Fed. R. Civ. P. 26(b)(1).

product doctrine bears the burden of establishing that either or both apply.[14] Carrying this burdern requires a clear showing that the asserted objections apply.[15] Also, the party claiming protection must provide a detailed description of the information along with the reasons for the objection to discovery.[16] A blanket claim as to the applicability of the protection does not satisfy the burden of proof.[17] If a party has, in fact, met the burden associated with the respective protection, the party may properly withhold that information by not producing the document or by producing a redacted version of the document. An entire document may be withheld when all of the information contained within it is subject to protection. Where a document contains protected information *and* discoverable information, the court will permit redactions of the privileged information.[18]

### A.  Attorney-Client Privilege

State law defines the scope of the attorney-client privilege in certain federal diversity cases.[19] Kansas law concerning the attorney-client privilege and its exceptions "is typical of the laws of other jurisdictions."[20] In fact, the elements of attorney-client privilege are the same under Kansas law and

---

[14]*White v. Graceland College Center for Professional Development & Lifelong Learning, Inc.*, 586 F. Supp.2d 1250, 1267-68 (D. Kan. 2008).

[15]*Id.* (citing *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000)).

[16]*Id.*

[17]*Id.*

[18]*U.S. Fire Ins. Co. V. Bunge North America, Inc.*, Civ. Action No. 05-2192-JWL-DJW, 2008 U.S. Dist. LEXIS 49024, at *7 (D. Kan. June 23, 2008 ).

[19]*See* Fed. R. Evid. 501.

[20]*In re A.H. Robins Co.*, 107 F.R.D. 2, 8 (D. Kan. 1985).

federal common law. There are eight essential elements that comprise attorney-client privilege. The elements include:

> "(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived."[21]

The elements suggest, and case law supports, that the attorney-client privilege is not adequately invoked simply because an attorney and a client communicate.[22] The privilege only extends to "confidential communications which necessarily occur in the course of requesting or giving legal advice."[23] Legal advice must be predominate for the communication to be protected.[24] The privilege does not automatically extend to written communications between employees of a named party, such as a corporation, but the protection may apply if the employee communications are made in confidence for the primary purpose of obtaining or providing legal advice.[25] Yet, even if the communication meets that standard, the privilege still will not extend to a communication if the privilege has been waived. The party resisting discovery on the basis of privilege has the burden

---

[21]*Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 418 (2000) (quoting *State v. Maxwell*, 10 Kan. App. 2d 62, 63 (1984)). *See Hillsdale Envtl. Loss Prevention, Inc. v. United States Army Corps of Eng'rs*, Civ. Action No. 10-2068-CM-DJW, 2011 U.S. Dist. LEXIS 30376, at *6 (D. Kan. Mar. 23, 2011).

[22]*Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) (citing *Fisher v. U.S.*, 425 U.S. 391, 403 (1976)).

[23]*Id.*

[24]*Hillsdale Envtl. Loss Prevention, Inc.*, 2011 U.S. Dist. LEXIS 30376 at *8.

[25]*See Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 666 (D. Kan. 2007).

of demonstrating that the privilege applies and has not been waived.[26]  "In other words, the proponent of the privilege must provide sufficient information to enable the requesting party and the Court to determine whether each element of the privilege has been satisfied."[27]

### B.     Work Product Doctrine

The work-product doctrine is governed by federal law.[28]  Federal Rule of Civil Procedure 26(b)(3) provides that,

> [o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney,  consultant, surety, indemnitor, insurer, or agent).[29]

For documents to be protected under this doctrine, the party claiming the protection must demonstrate that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[30]  However, such materials can still be discovered if the party seeking the discovery demonstrates that there is substantial need for the otherwise discoverable

---

[26]*Johnson v. Gmeinder*, 191 F.R.D. 638, 642-43 (D. Kan. 2000); *ERA Franchise Sys., Inc. v. Northern Ins. Co. Of N.Y.*, 183 F.R.D. 276, 278 (D. Kan. 1998) (citing *State v. Maxwell*, 691 P.2d 1316, 1319 (1984)); *see* K.S.A. 60-426(c)(2).

[27]*Hillsdale Envtl. Loss Prevention, Inc.*, 2011 U.S. Dist. LEXIS 30376 at *10.

[28]Fed. R. Civ. P. 26(b)(3); *see Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).

[29]Fed. R. Civ. P. 26(b)(3).

[30]*U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007) (citing *Johnson*, 191 F.R.D. at 643).

materials and there is no other means for obtaining that information without suffering undue hardship.[31]

The purpose of the doctrine is to allow attorneys and legal teams to prepare for litigation with a "certain degree of privacy," and without undue interference or fear of intrusion or exploitation of one's work by an adversary.[32] Yet, the protection is not afforded to investigative work unless the work is conducted under the supervision of an attorney in preparation for the real and imminent threat of litigation.[33]

Not only does the underlying purpose of the doctrine influence a Court's ruling on its application, but so too do the components of cause and reasonableness.[34] Cause entails that the document was created due to the anticipation of litigation.[35] The reasonableness component consists of an analysis of whether a party's anticipation of litigation was reasonable under the circumstances at the time the document was created.[36]

Litigation can theoretically be foreseen from the time of nearly any incident, but that is not sufficient for a party's documents to gain protection of the work product doctrine. Specifically, insurance companies routinely investigate claims without litigation necessarily looming. So it follows that the work product doctrine is not automatically applied to any and all documents created after the time of an incident. Materials assembled in the ordinary course of business for other non-

---

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*See id.* at 657-58.

[35]*Id.*

[36]*Id.*

litigation purposes are not protected by the work product doctrine.[37]  To differentiate documents

created by an insurance company because of a reasonable anticipation of litigation and documents

involving claims handling and investigating that would happen regardless of litigation, the party

resisting discovery must "point to a definite shift made by the insurer or adjuster from acting in its

ordinary course of business to acting in anticipation of litigation."[38]  Without such a showing, the

Court will not assume that the protection applies to every document created after the time of the

incident.

## IV.     Analysis of the Disputed Discovery

The documents at issue include five (5) document redactions from adjuster reports and six

(6) e-mail redactions, all of which appear on Plaintiffs' privilege logs of redacted documents.  The

Court addresses each in turn, analyzing whether the redactions are properly protected by the

attorney-client privilege and/or the work product doctrine.

### A.     Adjuster Report Documents

#### 1.     <u>RPA000522-523</u>: September 21, 2007 Report No. 1 prepared by James Ratcliff and received by Adrienne Benzoni

##### a.     Not Attorney-Client Privileged

The first document redaction is not protected by the attorney-client privilege.  While the

basis for redaction provided on the privilege log states that the redacted portion "[d]etail[s] legal

information *obtained from counsel*,"[39] the information was not based on information obtained

from counsel.  In fact, the unredacted portion of the report clearly states that "[w]e understand

---

[37]*Id.*

[38]*Id.*

[39]Plfs.' Response In Opp. To Def.'s Second Mot. To Compel, (ECF No. 99) at pg. 4 (emphasis added).

that counsel has been retained to provide further coverage comments and opinion. We differ [sic] further comments to their office." Thus, the author, James Ratcliff of Ratcliff Property Adjusting, acknowledges that he has not conferred with counsel. And the context of the report does not suggest that the author is seeking legal advice. Rather, the author assesses the factual scenario presented by the railcar incident and states that a legal representative or someone from Adrienne Benzoni's office should assess the legal ramifications. As legal advice is not provided or sought and the communication involves no attorney or legal advisor, this redaction was not and cannot be properly characterized as protected by the attorney-client privilege. Furthermore, to say this information was "obtained from counsel" is a gross misstatement of fact.

### b. Not Protected by Work Product Doctrine

The redaction is also not protected by the work product doctrine. Even though some elements for work product are met, the underlying purpose of the rule and judicial interpretation dictate the protection does not apply.

The document does qualify as the appropriate material protected by the work product doctrine - "documents or tangible things"[40] - thus, satisfying the first element. The second element, however, is not satisfied. The Court is not convinced that this report was made in anticipation of litigation or for trial. The cause and reasonableness tests guide the Court in assessing this element.[41] The report was communicated after Defendant's initial written denial of liability and after Plaintiffs retained counsel, suggesting that the party's anticipation of litigation may have been reasonable. But Plaintiffs have not demonstrated with evidence or even

---

[40]*U.S. Fire Ins. Co.*, 247 F.R.D. at 657.

[41]*See id.* at 657-58.

argument that this report would not have been made but for the threat of litigation. Based on the context of the report and the argumentation in the briefing, the Court concludes the report was made in the ordinary course of business, not in anticipation of litigation or trial. Therefore, the cause component of this element is lacking. The third element is satisfied in that the document was prepared for a party, Plaintiffs, by their representative.[42]

Yet, even assuming all three of the elements were satisfied, the underlying purpose of the protection would remain unmet. The doctrine is designed to permit the unstifled, unscrutinized preparation of litigation by attorneys and legal teams. Thus, professionals can perform their job duties without fear of exploitation, interference, or intrusion by an adversary. Here, where no legal team member is corresponding with or involved in the analysis/report it is difficult for the Court to find protection under the work product doctrine. Along those lines, courts have held that investigative work is not protected unless done under the supervision of an attorney. The unredacted portion of this report indicates that the author had no contact with legal counsel and would defer to the judgment of counsel. Thus, this document is not protected by the work product doctrine.

2. <u>RPA0001040:</u> **January 7, 2008 Report No. 1, Global Master Policy prepared by James Ratcliff and received by Adrienne Benzoni**

a. **Not Attorney-Client Privileged**

This redaction is not protected by the attorney-client privilege. After reviewing the redaction, the author lists the basis for the opinions provided. While again the privilege log indicates that this is "legal information obtained from counsel," counsel had not been consulted.

---

[42]The rule suggests that a representative of a party encompasses a wide variety of individuals and positions, so this is interpreted broadly.

The context of the redacted information suggests the author has not conferred with counsel or based any opinions on advice of any legal professional. And the author is not seeking legal advice. Instead, he is deferring legal assessment to Adrienne Benzoni's office or counsel retained by ACE. No legal advice is provided or sought. The communication does not involve an attorney or legal advisor. Thus, this redaction is not attorney-client privileged.

### b. Not Protected by Work Product Doctrine

This document redaction is not protected by the work product doctrine because not all of the essential elements are met. As a document, the first element is satisfied. The second element is not satisfied in that the report was not made in anticipation of litigation or for trial. A review of the redacted portion indicates that there likely was no imminent or real threat of litigation from the author's perspective, though this communication was composed after the Defendant's first written denial of liability. With no more argumentation on whether the threat of litigation was real or imminent at this time, the Court cannot conclude that it was. This element remains unsatisfied since Plaintiffs have not demonstrated that this report was made due to the threat of litigation. The Court finds the report was made in the ordinary course of business, not in anticipation of litigation or trial. The third element is satisfied in that the document was prepared for a party, Plaintiffs, by their representative.

Additionally, the underlying purpose of the protection would not be advanced by protecting this redaction. Since no legal team member was involved with the drafting or supervision of this communication, nor even in contact with the author of this communication, the Court would be reluctant to find that non-disclosure of this information would protect the legal community from the harsh scrutiny and exploitation of an adversary. Thus, this redaction is not protected.

3.  **RPA001057:** **March 29, 2008 Report No. 4, Global Master Policy prepared by James Ratcliff and received by Adrienne Benzoni**

### a.   Attorney-Client Privileged

The redacted portion of this report is properly withheld pursuant to the attorney-client privilege. Here, legal advice from counsel is being relayed to the client, Plaintiffs ACE, from Ratcliff Property Adjusting. As Ratcliff Property Adjusting was hired by ACE to perform certain tasks relating to the railcar flooding, Ratcliff Property Adjusting is similarly situated to an employee or representative of ACE. Though recorded communications between a party's employees are not necessarily protected under this privilege, the protection may apply if the communication was made in confidence for the primary purpose of obtaining legal advice. Under that circumstance, employee communications transmitting legal advice from counsel to other employees remain privileged. A review of this redaction reveals it is confidential and conveying legal advice of counsel. Therefore, this redacted communication is privileged. Moreover, the privilege was preserved on Plaintiffs' privilege log[43] and the Court is aware of no circumstances under which the privilege was waived. So the redacted portion of the document is properly withheld by Plaintiffs.

### b.   Not Protected by Work Product Doctrine

The work product doctrine does not protect the information contained in this document redaction since not all of the elements are satisfied. The first element is met since the document is appropriate material protected by the work product doctrine. Yet, the Court is unable to determine, from the briefing on the motion at hand and reading the redacted material, whether the threat of litigation was imminent or real at the time the report was drafted. The report was

_____

[43]Ratcliff Property Adjusting, Ltd.'s Supp. Privilege Log, pg. 5.

communicated after Defendant's two written denials of liability and while working with retained counsel, suggesting the party's anticipation of litigation may have been reasonable. But the Court cannot determine that with finality. Additionally, the Court is unable to determine whether the cause component is met here. Plaintiffs have not demonstrated that this report was created for litigation or trial. In fact, taken as a whole, the Court concludes the report was made in the ordinary course of business, not in anticipation of litigation or trial. Thus, the second element is not satisfied. The third element is satisfied. As only two elements are met, this document redaction is not protected by the work product doctrine.

4. **RPA0001132: November 24, 2009 Report No. 19, Global Master Policy prepared by James Ratcliff and received by Adrienne Benzoni**

a. **Potentially Attorney-Client Privileged**

The redacted portion of this document contains legal advice. Whether or not that advice is confidential is a close call. However, the Court declines to determine such a close call when it is clear that the redacted information is protected by the work product doctrine.

b. **Protected by Work Product Doctrine**

This document redaction is protected by the work product doctrine. Since the redaction is contained in a document, the first element is satisfied. The second element is met since a lawsuit was in progress before this Court at the time the document was drafted and the communication occurred. The third element is satisfied in that the document was prepared for Plaintiffs by their representative. Therefore, this document is protected by the work product doctrine. Plus, since the privilege was preserved on Plaintiffs' privilege log[44] and the Court is aware of no

---

[44]*Id.* at pg. 7.

circumstances under which the privilege was waived, the redaction is properly withheld by Plaintiffs.

     **5.**     **<u>A002954; A002955; A002956; A002959; A002960:</u> January 3, 2008 e-mail from James Ratcliff to Adrienne Benzoni**

Several redactions detailed on ACE's privilege log for this entry were incorrectly identified as privileged and/or work product. The redacted entries on A002954, A002955, A002959, and A002960 contain "reserve information" which the parties agree are not subject to objection or before the Court at this time. Thus, the only redacted information at issue in this entry appears on A002956.

While the privilege log indicates that the protected information is within an e-mail, the redacted document is actually a report that was attached to an e-mail.[45] The report is the same report as discussed above at RPA0001040. The only differences are formatting and the January 3, 2008 date on the report was hand changed to January 7, 2008 on the report at RPA0001040. Other than that the reports are identical, including the redacted sections. Therefore, the Court finds the same analysis applied above is applicable here. Thus, the outcome regarding whether the information is privileged and/or protected by the work product doctrine is the same.

     **a.**     **Not Attorney-Client Privileged**

This redaction is not protected by the attorney-client privilege.

     **b.**     **Not Protected by Work Product Doctrine**

The redaction is not protected by the work product doctrine.

**B.**     **Internal E-mail Communications**

---

[45]Plfs.' Response In Opp. To Def.'s Second Mot. To Compel, (ECF No. 99) at pg. 5.

6.     **A002842**: July 22, 2009 e-mail from Adrienne Benzoni to Peter Schellevis

   a.     **Partially Attorney-Client Privileged**

Some of the information contained in the redaction of this e-mail is properly withheld pursuant to the attorney-client privilege. Here, legal advice from counsel is being relayed from one employee to another. Since this is an employee communication transmitting legal advice from counsel to other employees made in confidence, the redacted information is privileged. However, the first half of the redacted portion contains no legal advice. It does contain information relating to this lawsuit, but the information is not confidential. Thus, the first half of the redacted paragraph is not privileged, while the second half is privileged. Because the claim for privilege was preserved on Plaintiffs' privilege log[46] and the Court is aware of no circumstances under which the privilege was waived, the first half of the redacted portion of the document is properly withheld by Plaintiffs.

   b.     **Protected by Work Product Doctrine**

The work product doctrine does protect this document redaction from disclosure. The first element is satisfied because the subject discovery is a document. The second element is met since a lawsuit was in progress before this Court. The third element is satisfied in that the document was prepared for Plaintiffs by Plaintiffs (employees of ACE).

Here, while no legal professional is a party to the communication, the work of such legal professionals is discussed and, thus, could be subject to scrutiny, interference, or exploitation by an adversary. Therefore, the purpose of the work product doctrine is furthered by protecting this information from disclosure. So, this redaction is protected by the work product doctrine. Since

------

[46]ACE's Privilege Log re: Jan 2011 Production, pg. 1.

there is no evidence of waiver and the claim for protection was preserved on Plaintiffs' privilege log,[47] the redaction is properly withheld by Plaintiffs.

> 7.  **A002862: July 16, 2008 e-mail from Fisher Kanaris to Thomas McGlynn, Adrienne Benzonis, and Peter Schellevis**

### a. Not Attorney-Client Privileged

This e-mail is an attorney-client communication. However, the text of the e-mail does not contain the type of information that the privilege is designed to protect. The e-mail contains no legal advice. It also contains no confidential information. Thus, the text of the e-mail cannot be properly withheld under the guise of attorney-client privileged information. That is not to say that the attachment to the e-mail is not protected. On the contrary, the Court finds the e-mail attachment is properly privileged despite the non-privileged nature of the document redaction contained within this e-mail communication.

### b. Protected by Work Product Doctrine

This e-mail is certainly protected by the work product doctrine. The first element is met since a document is at issue. The context of the redaction demonstrates that the threat of litigation was imminent at the time and, thus, the second element is satisfied. The third element is satisfied in that the document was prepared for Plaintiffs by retained counsel. Therefore, this redaction is protected by the work product doctrine. Since there is no evidence of waiver and the claim for protection was preserved on Plaintiffs' privilege log[48] the redaction is properly withheld by Plaintiffs.

---

[47] *Id.*

[48] *Id.*

**8.     <u>A002965</u>: February 25, 2008 e-mail from Adrienne Benzonis to Jim Ratcliff and Thomas McGlynn, and with additional copied recipients of Peter Schellevis, Jan Henrik Wiersema, and Alex DeKeyser**

### a.     Attorney-Client Privileged

This e-mail is properly redacted as attorney-client privileged.  The e-mail communication is between ACE employees and ACE's representative, Ratcliff Adjusting Property, discussing legal issues and requesting that the ACE employee working with legal counsel relay legal advice to these individuals after conferring with retained counsel.  As there is no evidence of waiver and the claim for protection was preserved on Plaintiffs' privilege log,[49] this information has been properly withheld by Plaintiffs ACE.

### b.     Not Protected by Work Product Doctrine

Because not all three elements are met, this document redaction does not properly fall within the scope of the work product protection.  The first element is satisfied because the subject discovery is a document.  The Court is unable to determine whether the second element is met.  It is unclear from the context of the e-mail whether the threat of litigation was imminent at the time the communication was drafted.  The case was filed in this Court on April 15, 2009, over a year after this e-mail was sent.  The only guidance Plaintiffs provide the Court is to state that the communication took place after two written denials of liability by Defendant.[50] Additionally, the context suggests retained counsel was involved with the matter at the time the communication was written.  This may suggest that Plaintiffs' anticipation of litigation was reasonable, but the Court cannot determine that with certainty.  Thus, the second element is not

---

[49]*Id*. at pg. 2.

[50]Plfs.' Response In Opp. To Def.'s Second Mot. To Compel, (ECF No. 99) at pg. 7.

satisfied. The third element is satisfied because the e-mail was prepared for Plaintiffs' representative by Plaintiffs.

It is also unclear whether this is the type of information the doctrine was created to protect. Therefore, this redaction is not protected by the work product doctrine, though it is protected from disclosure via the attorney-client privilege.

> **9.** **A003077; A003078; A003079: February 22, 2008 e-mail from Peter Schellevis to Adrienne Benzonis, and with additional copied recipients of Jan Henrik Wiersema and Alex DeKeyser**

> **a.** **Not Attorney-Client Privileged**

Though this document is described as attorney-client privileged since it allegedly contains "theories *of counsel*,"[51] it does not qualify as such in that it is lacking essential elements of the privilege. Legal terms are discussed and advice is espoused regarding those terms. So at first glance, this seems to meet the first element of the attorney-client privilege. But the problem with this advice is that it is not "from a professional legal advisor,"[52] instead it comes from insurance employees, who may be well versed in some aspects of law due to the nature of their business, but by no means can be considered professional legal advisors. This then raises the question of whether discussions concerning legal concepts constitute the type of legal advice contemplated by the drafters of the attorney-client privilege elements. The Court thinks not, but instead decides this issue on the fact that there is no professional legal advisor involved in this

---

[51]*See id.* (emphasis added).

[52]At least as described in the briefing, no where is it suggested that Adrienne Benzoni, Peter Schellevis, Hemdrik-Jan Wiersema, or Alex DeKeyser are legal advisors of any type. In fact, Defendant UP specifically argues that Adrienne Benzoni is not in the legal profession, nor are the vast majority of authors and recipients of the subject discovery documents. *See* Def.'s Memo. In Supp. Of Def. UP Co.'s Second Mot. To Compel Discovery, (ECF No. 92) at pg. 6.

communication. The Court finds no evidence that this "information [was] required from legal counsel" as Plaintiffs suggest.[53] Moreover, the communications do not indicate that the employees are relaying information or advice from counsel. Therefore, these e-mail communications cannot properly be withheld under the attorney-client privilege.

### b. Not Protected by Work Product Doctrine

This document redaction is not protected by the work product doctrine. While the first and third elements are met, the second is not. The first element is satisfied because the subject discovery is a document. The second element, however, is not satisfied. Again, the Court is unable to determine from the context of the e-mail and counsel's explanation whether the threat of litigation was imminent at the time the communication was drafted. Thus, the Court finds the second element is not satisfied. The third element is satisfied because the e-mail was prepared for Plaintiffs by Plaintiffs in that the e-mail is a communication between ACE employees. Therefore, this redaction is not protected by the work product doctrine.

### 10. A003090: April 7, 2008 e-mail from Peter Schellevis to Adnan Elabed, and with additional copied recipients of Adrienne Benzonis, Alex DeKeyser, Jan Henrik Wiersema, Pierre Cambier, and Pete Chepul

### a. Potentially Attorney-Client Privileged

This communication contains attorney-client privileged information. The unredacted portion of this communication even indicates its privileged nature when it references "the case analysis sent by the law firm Fisher Kanaris." The communication then discusses the law firm's analysis. And while no professional legal advisor is directly involved in the communication, employees of ACE are relaying counsel's legal advice concerning this matter in confidence.

---

[53]Plfs.' Response In Opp. To Def.'s Second Mot. To Compel, (ECF No. 99) at pg. 7.

Yet, review of the redacted information leads the Court to believe that one line was inadvertently redacted by Plaintiffs. Thus, the fifth redacted line (i.e. the third line of the third paragraph) should not be redacted as it is not attorney-client privileged. The remaining redacted language is properly withheld by Plaintiffs since it qualifies for the privilege, there is no evidence of waiver, and the claim for privilege was preserved on Plaintiffs' privilege log.[54]

### b.      Not Protected by Work Product Doctrine

This document redaction is not protected by the work product doctrine. Even though two elements for work product are met, not satisfying one element is enough for the protection not to apply. Because this is a document, the first element is met. The threat of litigation is unclear from the context of the e-mail and the briefing associated with the pending motion. Thus, the second element is not satisfied. The third element is satisfied because the e-mail was prepared for Plaintiffs' representative by Plaintiffs. Though the thoughts, opinions, and impressions contained in this e-mail redaction seem to be the type of information the doctrine set out to protect, the Court cannot declare this protected as the essential elements are not satisfied. Thus, this redaction is not protected by the work product doctrine, though the majority of it is protected from disclosure pursuant to the attorney-client privilege.

11.      **A003358: October 1, 2007 e-mail from Peter Schellevis to Adrienne Benzonis, and with additional copied recipients of Ron Verhulsdonck and Jan Henrik Wiersema**

### a.      Partially Attorney-Client Privileged

The redactions contained in this communication can be easily divided into the first and second redaction. The first redaction is not attorney-client privileged as the information is not

---

[54]ACE's Privilege Log re: Jan 2011 Production, pg. 3.

legal advice which is confidential.  Thus, the first redaction of this e-mail (i.e. the last portion of the first full line of the body and the second line) must be produced unredacted to Defendant.

However, the second redaction within this e-mail is attorney-client privileged and may be withheld.  The redacted language satisfies the elements for the privilege, there is no evidence of waiver, and the claim for privilege was preserved on Plaintiffs' privilege log.[55]

### b. Not Protected by Work Product Doctrine

The redactions contained in this e-mail are not protected since not all the essential elements are met.  The first element is satisfied because the subject discovery is a document.  Yet, the Court is unable to determine whether the anticipation of litigation was imminent at the time.  This e-mail was drafted almost two years prior to Plaintiffs' filing suit.  But it was also written after Defendant UP's initial written denial of liability.  Thus, the second element is not met.  The third element is satisfied because the e-mail was prepared for Plaintiffs by Plaintiffs in that the e-mail correspondence is between ACE employees.  Since all the elements are not met, these redactions are not protected by the work product doctrine, though the second redaction is protected from disclosure via the attorney-client privilege.

### 12. Other Redacted Documents Submitted *In Camera* to the Court

Plaintiffs submitted documents A003359, A003361 - A003363, A003368, A003471, A003374, A003379, and A003380 to the Court for the *in camera* privilege review.  Yet, none of these documents are the eleven (11) discussed in the briefing to the Court which were described as the only documents still at issue.  Due to that, the Court finds that any privilege or protection claim regarding these documents is not currently at issue.  As any privilege and work product

---

[55]*Id.* at pg. 5.

protection challenges are not properly before the Court at this time, the Court declines to rule on

the privileged and/or protected nature of these documents.

## V.        Conclusion

### A.        Protected and Not Discoverable

The Court holds that the redactions contained within the following bates labeled

documents are protected by the attorney-client privilege and/or the work product doctrine and;

therefore, are not subject to production in discovery:   RPA001057, RPA0001132, A002842,

A002862, and A002965.

### B.        Partially Protected and Partially Discoverable

Two documents produced for *in camera* inspection contained some attorney-client

privileged information within the redactions made by Plaintiffs ACE.  So some of the redactions,

(i.e. the non-privileged portions) must be produced to Defendant UP.  Those redactions are

contained within the documents bates labeled A003090 and A003358.

### C.        Not Protected and Discoverable

Plaintiffs ACE provided the Court with four documents that contained redactions for

which Plaintiffs were unable to fulfill their burden of proof.  As such, those documents are not

deemed privileged and/or protected.  Therefore, said documents must be produced to Defendant

UP.  The documents are bates labeled RPA0000522-23, RPA00001040, A002956, and

A003077-79.

**IT IS THEREFORE ORDERED** that Defendant Union Pacific Railroad Company's

Second Motion to Compel Discovery (ECF No. 91) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that within **ten (10) days** from the date of this Order,

Plaintiffs ACE shall produce any non-privileged, non-protected redactions to Defendant UP

consistent with this Order, including redactions, in part or in full, on the following bates labeled

documents RPA0000522-23, RPA00001040, A002956, A003077-79, A003090, and A003358.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 6th day of June 2011.


s/ David J. Waxse

David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties