## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ACE USA and ACE European Group LIMITED, as Subrogee of AG SODA CORPORATION, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 09-2194-KHV |
| UNION PACIFIC RAILROAD COMPANY INC., | ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion to Compel or Alternatively for Sanctions (ECF No. 121). Defendant requests, pursuant to Fed. R. Civ. P. 37, an order compelling Plaintiff ACE European Group, Limited ("AEG") to produce a designated representative prepared to respond to the topics in Defendant's Notice to Take 30(b)(6) Deposition. Defendant also requests that the Court sanction AEG for the costs incurred during the first deposition and extend the September 2011 trial setting and dispositive motion deadline. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.     Background Facts**

This is a subrogation action brought by Plaintiffs ACE USA and AEG (collectively "Plaintiffs"), as subrogees of AG Soda Corporation, Inc. ("AG Soda" or "AGS") against Defendant Union Pacific Railroad Company. Plaintiffs seek to recover costs associated with the replacement and removal of destroyed soda ash occurring while being transported by Defendant by rail in June-July 2007 near Osawatomie, Kansas. The soda ash was destroyed when it became inundated in

several feet of flood water.  AG Soda submitted a claim to Plaintiffs, who paid under two insurance policies.  Plaintiffs now seek to recover against Defendant.  Plaintiffs claim that Defendant is strictly liable  for damages incurred under the Carmack Amendment, which governs the liability of rail carriers for damage to goods in transit.

During the course of discovery, Defendant served AEG with a Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), requiring AEG to produce for deposition a designated representative to answer questions on fourteen subjects of examination or topics.[1]  On May 4, 2011, AEG sent a letter to Defendant objecting to topics 1-11 and 14 as overbroad, unduly burdensome, and irrelevant. Subject to its objections, AEG indicated that it would produce Joseph Smith, Senior Vice President of Property and Marine Claims for ACE USA, ("Smith") to testify concerning all the topics.  On May 10, 2011, AEG produced Mr. Smith in Philadelphia, Pennsylvania as its 30(b)(6) designated representative.  By its present motion, Defendant claims that Mr. Smith, who is not an officer, director, or employee of AEG, but senior vice president of property and marine claims for a sister subsidiary, was wholly unprepared to answer questions pertaining to the fourteen topics set out in the 30(b)(6) notice.  Defendant brings this motion to compel another deposition and for sanctions based upon Plaintiff AEG's alleged failure to properly prepare its 30(b)(6) deponent.

## II.    Rule 30(b)(6) Standard

The appropriate starting place for a discussion regarding adequacy of a Rule 30(b)(6) corporate designee's testimony is the language of the Rule itself:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, . . . and must describe with reasonable particularity the matters for

---

[1]*See* Feb. 8, 2011 Notice (ECF No. 88) and April 20, 2011 First Amended Notice (ECF No. 112) (correcting date and changing location of deposition).

examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.[2]

In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation.[3]  "The Rule 30(b)(6) designee does not give his personal opinion.  Rather, he presents the corporation's 'position' on the topic."[4]  The designee testifies on behalf of the corporation and thus holds it accountable.[5]

With regard to choosing a deponent to speak on behalf of the corporation, companies "have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter."[6]  Notably, and because Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf as to all matters known or reasonably available to it,[7] this Court has held that the Rule implicitly requires the designated representative to review all matters known

---

[2]Fed. R. Civ. P. 30(b)(6).

[3]*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) (citations omitted).

[4]*Id.*

[5]*Id.* (citing *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999)) (holding a corporation has a duty under Rule 30(b)(6) to provide someone who is knowledgeable in order to provide "binding answers on behalf of the corporation") (quoting *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, 94-2395-GTV, 1995 WL 625962, at *13 (D. Kan. Oct 5, 1995)).

[6]*Id.* (citing *Starlight*, 186 F.R.D. at 639).

[7]*See* Fed. R. Civ. P. 30(b)(6) ("The person designated must testify about the information known or reasonably available to the organization.").

or reasonably available to the corporation in preparation for the 30(b)(6) deposition.[8]  Thus, the Rule makes clear that a party is not permitted to undermine the beneficial purposes of the Rule by producing a witness who has failed to adequately prepare to respond to questions about the designated topics.[9]   Any other interpretation would allow the corporation to "sandbag" the deposition process.[10]

This Court has previously acknowledged that these requirements may be onerous, but justified.  In *E.E.O.C. v. Thorman & Wright Corp.*,[11] the Court explained the requirements of Rule 30(b)(6) and why they are important:

> [T]he burden upon such a responding entity is justified since a corporation can only act through its employees.  These requirements negate any possibility that an inquiring party will be directed back and forth from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding upon that corporation.  To allow the Rule to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.  Then, and as noted above, the responding party must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the interrogator and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by the interrogator as to the relevant subject matters.  Once notified as to the reasonably particularized areas of inquiry, the corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.[12]

---

[8]*Sprint Commc'ns*, 236 F.R.D. at 527-28 (citing *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car*, 210 F.R.D. 730, 735 (D. Kan. 2002)).

[9]*E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 425-26 (D. Kan. 2007).

[10]*Id.* at 426.

[11]243 F.R.D. at 426.

[12]*Id.* (internal quotations omitted).

## III.    Whether Plaintiff AEG Produced an Adequately Prepared 30(b)(6) Designated Representative

Defendant asserts in its motion that Plaintiff AEG failed to produce a Rule 30(b)(6) witness who was adequately prepared to respond to questions about Topics 1 through 8, and 11 through 14.[13] In response, Plaintiffs argue that Mr. Smith, as AEG's designated 30(b)(6) representative, testified fully and completely as to the fourteen topics identified in the deposition notice. They further argue that, given his experience working with similar claims for ACE American Insurance Company, Mr. Smith is qualified to represent AEG in the 30(b)(6) deposition.  In his role as Senior Vice President of Property and Marine Claims, Mr. Smith is responsible for oversight of all domestic and international property and marine insurance claims for ACE American and has 36 years working in the property insurance industry, including the past eight years with ACE American.  Because AEG provided a qualified representative, Plaintiffs place the blame on Defendant for not issuing a deposition of Mr. Smith or Peter Schellevis in their individual capacities, and for propounding fourteen very limited topics.

Rule 30(b)(6) does not require a company to designate an officer, director, managing agent, or employee as its representative, it also permits "other persons who consent to testify on its behalf."[14]  Plaintiff AEG could thus designate Mr. Smith as its Rule 30(b)(6) representative. While the selection of a non-employee, Mr. Smith, is permitted by the Rule, it does suggest that he would not have the required knowledge of the noticed topics without AEG's assistance in preparing for the deposition.  Although Mr. Smith is a qualified representative for the 30(b)(6) deposition, AEG still

---

[13]Defendant does not appear to challenge Mr. Smith's testimony as to Topics 9 and 10.

[14]Fed. R. Civ. P. 30(b)(6).

has the burden to adequately prepare him as its designated representative to answer the topics listed in Defendant's deposition notice.

Having determined that Plaintiff AEG is permitted to designate Mr. Smith as its Rule 30(b)(6) representative, the Court next must determine whether Plaintiff AEG adequately prepared him to testify on its behalf regarding the topics accompanying the deposition notice. In doing so, the Court reviews the deposition transcript of Mr. Smith for each topic challenged in Defendant's motion to compel.

**A. Topic No. 1: ACE Europe's analysis of whether, to what extent, and on what basis ACE Europe's policy covered or excluded the claim submitted by AGC for expenses associated with the removal of hardened soda ash from the railcars.**

Based upon its review of the transcript from Mr. Smith's deposition, the Court finds that AEG failed to adequately prepare Mr. Smith to respond to Topic 1. Defendant can use a 30(b)(6) deposition to discover the subjective beliefs of the corporation, including the thought process leading to its policy coverage decisions. The topic pertained to analysis performed by Plaintiffs applying its insurance policy coverage to the soda ash incident.

At the deposition, counsel for Defendant asked Mr. Smith about his knowledge about the soda ash claim and what he did to prepare for the deposition.

Q. What was your role personally for ACE American in connection with this soda ash claim?

           *       *       *

A. Adrienne Benzoni was my direct report. And was responsible for providing me with information concerning the claim coming to me for authority in excess of her authority if any payments were to be made under the ACE American policy.

Q. Apart from the work done by Ms. Benzoni, did you have any personal involvement in the investigation of the ash claim or the adjustment of the soda ash claim?

           *       *       *

A. Not that I can recall.

Q. Were you called upon ACE European Group to provide any analysis coverage under the claim under the ACE European Group  policy?

                          *      *      *

 A. I don't believe so.

Q. Did you ever undertake any analysis of coverage under the ACE European Group policy prior to this litigation?

 A. I don't believe so.

                          *      *      *

Q. All right. You have been identified as a corporate representative on behalf of ACE European Group to respond to certain topics contained in the notice of deposition that I've provided you as Exhibit 1 to this deposition. I take it you have seen that before?

A. I have.

Q. When was the first time you saw it?

A. I believe yesterday.

Q. And what have you done in order to enable you to respond to these topics on behalf of ACE European Group?

A. I have reviewed some documents.

Q. Okay. Which ones?

A. There were some letters that I reviewed, I don't recall the exact dates or document numbers.

Q. Do you recall who the author was?

A. I do not.

Q. Was it from the adjuster who was handling the claim domestically for ACE?

A. I don't believe so.

Q. What were the nature of the letters?

7

A. I don't recall right now.

Q. Apart from letters, what else have you reviewed in preparation for the deposition?

A. Other than the letters in the notice, nothing.

Q. Have you looked at the policy, the ACE European Group policy?

A. I have not.

Q. Have you spoken with any representatives or employees, officers of ACE European Group in preparation for the deposition today?

A. Yes, I have.

Q. And who would that be?

A. Peter Schellevis.

Q. And who is Mr. Schellevis?

A. He is, I believe the claims manager in the Netherlands representing ACE European Group.

Q. Do you understand Mr. Schellevis was the person at ACE European who was responsible for oversight of the claim under the ACE European Group policy?

A. That's my understanding.

Q. What did you talk to Mr. Schellevis about?

A. We just discussed briefly the amount of money that had been paid under the ACE American local policy versus the ACE European Group policy.

Q. All right, anything else you talked to Mr. Schellevis about?

A. The manner in which payments were made by ACE European Group and other co-insurers to an account maintained by the broker and that those funds were - subsequently paid to the insured.

Q. Okay. Anything else you talked to Mr. Schellevis about?

A. I believe he confirmed that ACE European Group did not have any reinsurance for this loss nor did any of the co-insurers involved in the European program.

Q. Okay, anything else?

A. Not that I can recall.

Q. All right, did you speak to anybody else at ACE European Group apart from Mr. Schellevis?

A. I did not.[15]

Defendant also asked Mr. Smith questions pertaining to its first topic.  That topic sought information about the extent and on what basis ACE Europe's policy covered or excluded the claim submitted for expenses associated for the removal of the hardened soda ash from the railcars.

Q. And can you tell me what was done by ACE Europe as far as their analysis of coverage?

A. I know that they did undertake a coverage analysis and concluded that their policy afforded coverage for the cost of removing the hardened soda ash from the railcars.

Q. You were not involved in that process?

A. I was not.

Q. Who was for ACE European Group?

A. Other than Mr. Schellevis, I believe that there was an underwriter and an outside consultant that they, that were involved in the discussion. I don't recall their names.

Q. You don't know apart from Mr. Schellevis, you can't identify any other, the other persons who went through any analysis?

A. Not from the ACE European Group, no.

Q. Are you more familiar with the process that was undertaken by ACE American as far as the coverage analysis of this claim?

---

[15]Smith Dep. 13:10-17:12.

\*       \*       \*

A. Yes, more familiar.

Q. And what -- what is your familiarity with the analysis undertaken by ACE American versus ACE European Group Limited?

\*       \*       \*

A. It's my recollection that the ACE American policy provided coverage for the property damage, damage to the product which in this case would have been the loss of salable soda ash being transported upon the -- the railroad. It's also my understanding that the ACE American policy provided debris removal coverage only at insured locations and it was determined that the coverage under the ACE American policy did not extend to cover debris removal at non-insured locations.

Q. And what process was undertaken by ACE in connection with this coverage analysis?

A. I believe that Adrienne Benzoni reviewed the policy, had some discussions with Mr. Schellevis. I don't recall if there were any ACE staff attorneys involved in the review.

\*       \*       \*

Q. So let's speak in contrast to what was done in the United States as to what was done in -- in Europe. You said that Mr. Schellevis was involved and there were two other individuals, an underwriter and a consultant whose name escapes you currently?

A. Correct.

Q. What -- what sort of analysis did they go through, do you know?

A. I do not.

Q. Have you -- did you make any attempt to find that out in preparation for today's deposition?

A. I did not attempt to obtain any details. I was just advised that they made a coverage determination and concluded that coverage for debris removal was afforded under their policy.

Q. And who advised you of that?

A. Mr. Schellevis.

Q. Do you know if there were any written work product created as far as an analysis that was undertaken by ACE Europe?

A. Not that I know of.

Q. Okay. And did you ask Mr. Schellevis if there was any written document that analyzed coverage under this policy?

A. I did not.[16]

Based on Mr. Smith's testimony, it appears that he was not adequately prepared to address questions pertaining to whether, to what extent, and on what basis ACE Europe's policy covered or excluded the claim submitted for expenses associated with the removal of hardened soda ash from the railcar. The Court finds that AEG reasonably knew or should have known information about this topic. Mr. Smith's recitation of AEG's policy during cross-examination does not address the analysis that AEG performed prior to its decision that its policy covered the soda ash incident. Similarly, his identification of an e-mail outlining the coverage policy does not respond to Defendant's topic. AEG failed to adequately prepare Mr. Smith to respond to Topic 1.

**B.** **Topic 2: ACE Europe's analysis of whether, to what extent, and on what basis ACE Europe's policy covered or excluded the claim submitted by AGC for expenses to remediate environmental contamination at the site where work was performed to remove the hardened soda ash from the railcars.**

The Court finds that AEG failed to prepare Mr. Smith to respond to Topic 2. Defendant sought information about AEG's analysis regarding coverage of expenses to remediate environmental contamination.

Q. Do you have any understanding as to the sort of work that was undertaken by the contractor in this case?

A. The, can you specify contractor?

---

[16]Smith Dep. 18:9-21:18.

Q. Sure, there is an individual hired by ACE or ACE's adjuster to do the removal of the soda ash from the railcars, a Mr. Winslow, were you aware of that?

A. I'm not familiar with the name, no.

Q. All right. Do you know that there was someone down near Houston, Texas who was taking this hardened soda ash out of the cars and doing something with it?

A. Yes, I was aware of that.

Q. Do you have any understanding as to the environmental remediation costs incurred by ACE in connection with Mr. Winslow's work?

        \*     \*     \*

A. I'm not sure to what extent the cost of removing the hardened soda ash from the railcars was considered to be environmental in nature. There may have been some disposal of the product that was considered to be environmental in nature.

Q. Do you know, were you aware that in connection with this case ACE European Group claims to have incurred approximately $600,000 to do various environmental remediation of the site where Mr. Winslow's work was performed?

A. I know that there were some expenses or some component in the claim, but I don't have the exact dollar amount.

Q. And do you know the nature of the work that led to those charges?

A. I do not.

Q. An do you know what ACE Europe has done to analyze whether and to what extent those charges for environmental remediation of contamination of the work site where Mr. Winslow did the work was covered under the policy?

A. I do not.

Q. Did you talk to Mr. Schellevis about that?

A. Not in detail.[17]

The Court finds that AEG reasonably knew or should have known information about this topic. Someone from the company analyzed the policy in this case. Indeed, Mr. Smith indicated

---

[17]Smith Dep. 25:16-27:13.

that Defendant should talk to a different representative of AEG.[18]  Rule 30(b)(6) exists to eliminate this kind of evasion where the deponent resists answering a question by pointing toward a different employee.   The Court finds that Mr. Smith's inability to provide any answer to this line of questioning strongly supports the conclusion that AEG did not properly prepare him for that topic.

### C.   Topic 3: ACE Europe's statement, as set forth in A003044, that the Global Master Policy covered expenses only to the extent the insured was liable for those expenses.

The Court finds that AEG failed to adequately prepare Mr. Smith to respond to Topic 3. Defendant inquired about AEG's statement in A003044 that the policy covered expenses only up to the extent to which the insured was liable.  Mr. Smith could not explain who the company was referencing in that email.[19]  He admitted that he would need to ask AEG employees to clarify the meaning of the e-mail but that he did not do so prior to the Rule 30(b)(6) deposition.

Q. You are just not sure exactly what they were talking about in this communication [the statement contained in A003044], is that safe to say?

A. That's safe to say.

Q. Okay. I mean, I can read this and interpret it different ways, and I'm sure you have done that as well is that correct?

A. It would, you know, leave me wondering, I mean, if I had received that e-mail directly I might have gone back and asked them to further explain that -- that comment.

Q. All right, so have you gone back and asked them to further explain the comment so you can answer this on behalf of them here at the deposition today?

---

[18]Smith Dep. 29:10-13.

[19]Smith Dep. 31:5-17.

13

A. I have not.[20]

Because someone at AEG issued this email, it is reasonable to expect them to know what it references. Despite providing insight into the policy later, he needed to address that specific email. Mr. Smith should have had this information regarding the email when he began the Rule 30(b)(6) deposition. AEG failed to adequately prepare Mr. Smith to respond to Topic 3.

> **D.     Topic 4: ACE Europe's analysis of whether, to what extent, and on what basis AGC was liable for the costs to remove the hardened soda ash from the railcars or to pay environmental remediation expenses.**

Plaintiffs argue that AEG has no memory of this topic because there is no paperwork indicating the decision making process. Analysis occurs during an undocumented round table discussion among a few employees. However, AEG has not established memory loss merely because it lacks paperwork memorializing the roundtable discussions. Multiple company employees witnessed or participated in this roundtable, and any one of them could have testified at the deposition. It is not unreasonable to expect that AEG would have knowledge about what happened here, and it could have informed Mr. Smith.

The Court finds that AEG failed to adequately prepare Mr. Smith to respond to Topic 4. Defendant inquired about the analysis done to determine the liability of AGC for the cleanup cost to remove soda ash. When asked if he had information regarding the analysis undertaken by AEG, Mr. Smith responded, "I do not."[21]

> **E.     Topic 5: To the extent ACE Europe paid AGC's claim under the ACE Europe Policy, the coverage provision or provisions of the policy under which the payments were made.**

---

[20]Smith Dep. 31:18-32:9.

[21]Smith Dep. 38:4-7.

With regard to Topic 5, the Court finds that AEG adequately prepared Mr. Smith to respond to this topic.  Defendant asked about the provisions under which payments were made.  When asked on direct, Mr. Smith did not know without looking at the policy.[22]  On cross-examination, he used a copy of the policy to point out the provisions.[23]  By identifying the policy provisions, Mr. Smith provided the information requested under this topic.  While Defendant's questions on direct should have been no surprise, he eventually provided enough of an answer during cross-examination to demonstrate that the company provided an adequate deponent for Topic 5.

   F.   **Topic 6: Whether and to what extent ACE Europe actually funded the payments to AGC under the ACE Europe Policy, as well as the extent to which such payments were funded by the other participating insurance companies, including RSA Global Ltd., Tokio Marine Insurance, and/or Axa Corporate Solutions.**

The Court also finds that AEG adequately prepared Mr. Smith to respond to Topic 6.  In response to questions asking him to identify the proportions paid by ACE Europe, Mr. Smith provided an adequate answer prepared to him by AEG.  He informed Defendant that ACE Europe paid 40%, while the other three insurance companies paid 20% each.[24]  Although he did not seem perfectly certain that he relayed the information accurately, that does not mean AEG failed to prepare him properly.  Defendant should not construe that uncertainty as a lack of 30(b)(6) preparation.  There is no requirement that Mr. Smith have personal knowledge or independent research on the topic.  He was adequately prepared to answer the question.

---

[22]Smith Dep. 40:3-5.

[23]Smith Dep. 83:20-84:3, 86:1-12.

[24]Smith Dep. 41:13-16.

**G.      Topic 7: If amounts paid to AGC under the ACE Europe policy were actually paid by entities other than ACE, whether, to what extent, and on what basis these other parties have authorized ACE to assert their claims in the present lawsuit against Union Pacific, and whether and to what extent ACE has agreed to reimburse the other entities with amounts recovered through the present lawsuit.**

Mr. Smith adequately addressed this topic with his own personal knowledge.  He explained on direct that a standing policy that divided the payment responsibilities among ACE and other entities.  He believed that ACE does not have an agreement for reimbursement other than that covered in the policy he referenced.  Although this is more evidence that AEG did not prepare Mr. Smith for the deposition, it was only required to prepare Mr. Smith if he did not have adequate personal knowledge.  Here, it seems he correctly answered on behalf of the company from his own personal knowledge, even if better preparation would have been ideal.  Mr. Smith was adequately prepared to respond to Topic 7.

**H.      Topic 8: To the extent ACE Europe funded the payments to AGC under the ACE Europe Policy, the identity of the party or parties to whom payments were made and the date, amount, and method of each payment.**

Plaintiffs admit that Mr. Smith was unprepared to testify on this topic at the deposition. Defendant has agreed to drop this issue if AEG provided it with the payment information requested in the topic.  The conference requirement exists to allow parties to resolve issues without court intervention.  Keeping with that spirit, there is no need to analyze this topic if payment information has been provided.  According to Defendant's reply, this information has not been provided.[25]  Even if AEG provides the information, this delay could have an adverse effect on Defendant's trial

---

[25]Reply in Supp. of Def.'s Mot. Compel Discovery (ECF No. 148) at 6.

preparation.  For that reason, the Court finds that Defendant has been injured by AEG's failure to produce a qualified designated representative on this topic.

I.    **Topic 11: The nature of any agreement reached between ACE Europe and/or ACE USA and AGC in connection with the meeting held with AGC on December 20, 2007, which meeting is referenced in A003073.**

Based on the deposition testimony, Mr. Smith did seem adequately prepared to answer questions on Topic 11.  When asked to describe the nature of the agreement, Mr. Smith discussed the substance of the agreement, including the understanding that the insurance policy would cover the removal of hardened soda ash.[26]  Defendant followed up with questions concerning the basis for Mr. Smith's understanding but did not ask any more questions directing Mr. Smith to the substance of the topic.  Although his answers to this questioning show evidence that AEG failed to prepare him for the deposition, his knowledge on this particular topic was adequate.

There is no requirement that the company produce an actual witness to the meeting. Defendant argues that Mr. Smith did not adequately address this topic because he only prepared for it by talking to his attorney.  He was not a participant in the meeting referenced in the topic, and he did not speak directly to anyone who was.  During his deposition, he stated that he did not know who had participated in the meeting.[27]  If the attorney for the company has the information to answer the topic on behalf of the company, the deponent may prepare by talking the topic over with the attorney.  There is no grounds to compel another 30(b)(6) deposition on this topic, even if the company did the bare minimum rather than the ideal level of preparation.

---

[26]Smith Dep. 59:11-60:1.

[27]Smith Dep. 60:18-20.

**J.**    **Topic 12: The information systems used by ACE Europe to create, store, and retrieve electronically stored information associated with AGC's claim under the ACE Europe policy for damages associated with the soda ash shipment, including ACE Europe's efforts to retrieve documents from said systems in response to document requests served by Union Pacific in the present litigation.**

The Court finds that AEG failed to adequately prepare Mr. Smith to respond to Topic 12. Mr. Smith failed to shed light into the steps that ACE took to recover electronic documents. When asked where AEG searched for electronic documents, he could not confirm an answer.[28] He further suggested that other people in the company would be able to do so.[29]

**K.**    **Topic 13: The information systems used by ACE Europe to create, store, and retrieve email communications associated with AGC's claim under the ACE Europe policy for damages associated with the soda ash shipment, including ACE Europe's efforts to retrieve documents from said systems in response to document requests served by Union Pacific in the present litigation.**

The Court finds that AEG failed to adequately prepare Mr. Smith to respond to Topic 13. This topic is the same as Topic 12, except that it specifically refers to email communications. Mr. Smith indicated a similar lack of knowledge of whether there had been an independent search of email databases in connection with the document requests served in this case.[30]

**L.**    **Topic 14: Discussions between AGC and ACE Europe, referenced in A003480.**

The Court finds that AEG failed to adequately prepare Mr. Smith to respond to Topic 14. Defendant inquired about particular discussions referenced in a documented identified as A003480. Mr. Smith admitted he did not know anything about the discussions referenced in A003480.[31] Rule

---

[28]Smith Dep. 69:6-8.

[29]Smith Dep. 69:3-8.

[30]Smith Dep. 69:9-70:22.

[31]Smith Dep. 70:23-73:12.

30(b)(6) required Defendant to prepare particular topic areas, and Defendant particularly identified an interest in the discussions referenced in A003480. Despite Plaintiffs argument, Mr. Smith's testimony concerning other related topics does not excuse his inability to address the subject matter presented in Defendant's topic.

## IV.   Sanctions

Defendant requests, pursuant to Federal Rule of Civil Procedure Rule 37(a), its expenses and attorneys' fees incurred in traveling to and taking the 30(b)(6) deposition.   Rule 37 allows the Court to enter sanctions against a party for failing to attend a deposition.   For purposes of sanctions, producing an unprepared witness for a 30(b)(6) deposition "is tantamount to a failure to appear at a deposition."[32]   The Court may require the offending party or attorney to pay reasonable attorney's fees and expenses incurred during the course of the original deposition, unless the failure was "substantially justified."[33]

The Court finds that sanctions against Plaintiff AEG are appropriate in this case.   AEG failed to properly prepare its witness for a number of the topics.   As a result, Defendant will have to take another deposition to cover the noticed topics.   At times in the deposition, Mr. Smith indicated that other people would serve as more suitable deponents for a particular line of questioning.   The Court finds no reason why AEG's failure to prepare its Rule 30(b)(6) designee is substantially justified, and AEG does not submit any reason to mitigate the penalty in its briefing.   Because the rule exists to prevent this kind of evasion, sanctions are appropriate in this case.

---

[32]*Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999).

[33]*Cherrington Asia Ltd v. A & L Underground, Inc.*, 263 F.R.D. 653, 658 (D. Kan. 2010) (citing Fed. R. Civ. P. 37(d)(3)).

V.      **Conclusion**

Plaintiff AEG failed to adequately prepare its Rule 30(b)(6) designee to respond to several topics identified in Defendant's Notice to Take 30(b)(6) Deposition.  In particular, Mr. Smith provided inadequate responses to Topics 1, 2, 3, 4, 8, 12, 13, and 14.  On other topics, Mr. Smith barely had enough preparation to answer a topic, but was not so unprepared as to result in sanctions. Many times, Mr. Smith blatantly denied having knowledge of a given topic, especially topics referencing analyses undergone by Plaintiffs in determining that coverage existed.  Other times, he even indicated that other members of the company could better answer a question.  AEG should have considered designating those individuals in addition to or in lieu of Mr. Smith.

Because of Plaintiff AEG's violation of Rule 30(b)(6), Defendant incurred costs in expenses and attorney's fees in deposing Mr. Smith.  This Court finds that AEG should have to pay sanctions in the amount of reasonable attorney's fees and expenses.

Defendant also seeks to extend the deadline for dispositive motions and the trial date.  At this time, the Court denies the requests without prejudice in that only the District Judge has authority to change those deadlines. Since the deadline for filing dispositive motions has long passed, Defendant will have to show good cause to the District Judge for extending that deadline.  Additionally, Defendant will have to show good cause to the District Judge for continuing the trial setting.  In any event, it appears there is sufficient time for Plaintiffs to comply with this Memorandum and Order before the trial.  At this time, the Court cannot recommend that the District Judge grant the request to extend deadlines.

IT IS THEREFORE ORDERED THAT Defendant's Motion to Compel or Alternatively for Sanctions (ECF No. 121) is granted in part and denied in part.   The parties shall meet and confer

regarding a mutually convenient time **within the next fourteen (14) days** for Plaintiff AEG to produce a designee who is competently prepared to fully and responsibly address questions posed regarding Topics 1, 2, 3, 4, 8, 12, 13, and 14, as set forth in Defendant's Notice to Take 30(b)(6) Deposition.

IT IS FURTHER ORDERED THAT Defendant's request for sanctions against Plaintiff AEG is granted, and Defendant shall file by **August 8, 2011** an affidavit itemizing the reasonable attorney fees and expenses incurred in traveling to and taking the 30(b)(6) deposition.  Plaintiff AEG shall have until **August 22, 2011** to file any response to the affidavit.

IT IS FURTHER ORDER THAT Defendant's request to extend the dispositive motion deadline and trial setting is denied without prejudice to the request being brought to the District Judge.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 25th day of July, 2011.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:     All counsel and *pro se* parties