## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ACE USA and ACE EUROPEAN GROUP LIMITED,     ) <br>     ) <br>     ) <br> **Plaintiffs,**     ) <br>     ) <br> **v.**     ) <br>     ) <br> UNION PACIFIC RAILROAD COMPANY, INC.,     ) <br>     ) <br>     ) <br> **Defendant.**     ) <br> _____ ) | **CIVIL ACTION** <br><br> **No. 09-2194-KHV** |

## MEMORANDUM AND ORDER

Insurance companies ACE USA and ACE European Group Limited bring suit as subrogees of AGC Soda Corporation ("AG Soda") against Union Pacific Railroad Company, Inc. Plaintiffs allege that defendant is liable under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11706, for water damage to soda ash which Union Pacific transported from Wyoming to Texas in June and July of 2007, the cost of removing the damaged ash from the railcars and the cost of remediating soil contamination caused by the damaged ash. This matter comes before the Court on Plaintiffs' Motion For Partial Summary Judgment On Defendant's Defenses (Doc. #106) filed April 5, 2011 and Defendant Union Pacific Railroad Company's Motion For Summary Judgment (Doc. #127) filed May 31, 2011. For the following reasons the Court sustains defendant's motion for summary judgment and overrules plaintiffs' motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

**Facts**

Unless otherwise noted, the following material facts are uncontroverted.

As noted above, plaintiffs are two insurance companies, ACE USA and ACE European Group, which bring suit as subrugees of AG Soda.  Plaintiffs assert that AG Soda was the owner and consignee of soda ash which was damaged by flood waters while defendant transported it from Green River, Wyoming to Port Arthur, Texas under a bill of lading from Solvay Chemicals Co.[1]  On June 25, 2007, Solvay issued to Union Pacific bill of lading number 80816562 ("Solvay Bill of Lading") which provided the terms and conditions for the shipment.  Doc. #128, Ex. 27.

The Solvay Bill of Lading referenced an agreement between defendant and the American National Soda Ash Corporation ("ANSAC"), known as UP-C-35322.[2]  The parties agree that UP-C-35322 governed their relationship.  The Solvay Bill of Lading also incorporated by reference "all the

---

[1]     Solvay and AG Soda were separate corporate entities with shared ownership interests in a joint venture which mined soda ash in Green River, Wyoming.  The parties dispute whether AG Soda is the true consignee.  The bill of lading provides as follows:

> TO: Ship To and Destination – (mail or street address of consignee – for purposes of notification only)
> AG SODA
> c/o KINDER MORGAN TERMINAL -ASAHI ACCT
> COKE DOCK ROAD
> PORT ARTHUR, TX 77640
> Phone : 40-9983-6271

Memorandum Of Union Pacific Railroad Company In Support Of Motion For Summary Judgment Or Alternatively For Partial Summary Judgment (Doc. #128) filed May 31, 2011, Ex. 26.

Defendant's invoice, Doc. #128 Ex. 32, and electronic receipt, Doc. #128, Ex. 31, name American Natural Soda Ash Corporation as the consignee.

[2]     ANSAC is a separate corporate entity with operations at Port Arthur, Texas.  It is essentially a logistics company that facilitates exportation of soda ash.

terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight

Classification in effect on the date hereof, if this is a rail or rail water shipment or (2) in the applicable

motor carrier classification or tariff if this is a motor carrier shipment, or (3) as otherwise agreed to in

writing by the shipper, railroad(s) and motor carrier(s)."  Solvay Bill of Lading, Doc. #128, Ex. 26.  The

parties dispute what terms and conditions this provision incorporates by reference.

UP-C-35322 is titled "RAIL TRANSPORTATION CONTRACT PURSUANT TO 49 U.S.C.

SECTION 10709."  It also contains a provision labeled "LIABILITY AND CLAIMS" which provides

as follows:

> Customer agrees not to file any claim for freight loss or damage when the amount of
> proven loss or damage is less than Two Hundred Dollars ($200.00) per railcar (Minimum
> Claim Amount).  If Customer's proven loss or damage is determined to be in excess of
> the Minimum Claim Amount, the Minimum Claim Amount shall be deducted from any
> claim against Railroad for loss or damage to Commodity.  In all other respects, claims
> shall be processed in accordance with 49 U.S.C. Section 11706 and 49 C.F.R. Part 1005.

UP-C-35322, Doc. #128, Ex. 27 at 3.

The threshold question is whether the Carmack Amendment to the Interstate Commerce Act,

49 U.S.C. § 11706, or the Solvay Bill of Lading, UP-C-35322 and the terms and conditions incorporated

therein, provide the standard for defendant's liability.

**<u>Analysis</u>**

Plaintiffs' complaint seeks damages under the Carmack Amendment to the Interstate Commerce

Act, 49 U.S.C. § 11706.  The parties' motions for summary judgment raise numerous grounds for

summary judgment,[3] but the central question is whether the Carmack Amendment governs the parties'

---

[3]      Plaintiffs' motion argues the following: (1) Union Pacific's liability is governed by the
Carmack Amendment, (2) plaintiffs have standing to assert a claim against Union Pacific under the
Carmack Amendment, (3) the voluntary payment doctrine does not apply, (4) Union Pacific cannot
(continued...)

relationship.  If the Carmack Amendment does not apply, defendant is entitled to summary judgment.

## I.    Carmack Amendment

The Carmack Amendment regulates the liability of rail carriers.  It provides that any rail carrier

that delivers property and provides transportation or service subject to the jurisdiction of the Surface

Transportation Board is "liable to the person entitled to recover under the receipt or bill of lading."

49 U.S.C. § 11706(a).[4]  Under Section 11706, a rail carrier subject to the Board's jurisdiction may not

---

[3](...continued)
establish an "act of God" defense under the Carmack Amendment and (5) plaintiffs are entitled to receive prejudgment interest on their ultimate recovery.

Defendant's motion argues the following: (1) defendant's liability is governed by a Section 10709 contract – not the Carmack Amendment, (2) plaintiffs did not a submit a timely viable claim, (3) plaintiffs lack standing to sue for various reasons, (4) plaintiffs are not entitled to recover damages for cleaning or repairing the rail cars, or for soil remediation, (5) an "act of God" caused the damage, (6) plaintiffs' claim is prohibited by contract and (7) defendant's liability is limited by contract.

[4]    The parties do not dispute that the transportation or service at issue here is subject to the jurisdiction of the Surface Transportation Board.  Section 11706(a) provides in full as follows:

(a) A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this subsection is for the actual loss or injury to the property caused by--

(1) the receiving rail carrier;

(2) the delivering rail carrier; or

(3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

Failure to issue a receipt or bill of lading does not affect the liability of a rail carrier.

(continued...)

limit or be exempt from this liability, except that it may establish rates for transportation of property under which (1) the rail carrier's liability "is limited to a value established by written declaration of the shipper or by a written agreement between the shipper and the carrier," or (2) "specified amounts are deducted, pursuant to a written agreement between the shipper and the carrier, from any claim against the carrier with respect to the transportation of such property."  49 U.S.C. § 11706(c).[5]

---

[4](...continued)
A delivering rail carrier is deemed to be the rail carrier performing the line-haul transportation nearest the destination but does not include a rail carrier providing only a switching service at the destination.

49 U.S.C. § 11706(a).

[5]      49 U.S.C. § 11706(c) provides in full as follows:

(c)(1) A rail carrier may not limit or be exempt from liability imposed under subsection (a) of this section except as provided in this subsection. A limitation of liability or of the amount of recovery or representation or agreement in a receipt, bill of lading, contract, or rule in violation of this section is void.

(2) A rail carrier of passengers may limit its liability under its passenger rate for loss or injury of baggage carried on trains carrying passengers.

(3) A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part may establish rates for transportation of property under which--

(A) the liability of the rail carrier for such property is limited to a value established by written declaration of the shipper or by a written agreement between the shipper and the carrier; or

(B) specified amounts are deducted, pursuant to a written agreement between the shipper and the carrier, from any claim against the carrier with respect to the transportation of such property.

(d)(1) A civil action under this section may be brought in a district court of the United States or in a State court.

(continued...)

Section 10709 provides a mechanism, however, for rail carriers and purchasers of rail services to avoid the Carmack Amendment by contract. 49 U.S.C. § 10709(a)-(c); <u>see</u> <u>Babcock & Wilcox Co. v. Kan. City S. Ry. Co.</u>, 557 F.3d 134, 138 (3d Cir. 2009) (Section 10709 enables shippers and carriers to sidestep federal regulation of transportation agreements by entering into private contracts); <u>Dow Chem. Co. v. Union Pac. Corp.</u>, 8 F. Supp.2d 940, 941-42 (S.D. Tex. 1998) (purpose of Section 10709 is to allow parties to alter federal mandates or avoid federal control and oversight over rail contracts). Under Section 10709, rail carriers and purchasers of rail services may enter into a private contract for specified services under specified rates and conditions. 49 U.S.C. § 10709(a). Such contract exclusively governs the parties' duties in connection with services provided under the contract and is not subject to the rail regulations in Part A of Subtitle IV of Title 49 of the United States Code, which includes the Carmack Amendment. 49 U.S.C. § 10709(a)-(c).[6]

---

[5](...continued)
49 U.S.C. § 11706(c).

[6]      49 U.S.C. § 10709(a)-(c) provide in full as follows:

(a) One or more rail carriers providing transportation subject to the jurisdiction of the Board under this part may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions.

(b) A party to a contract entered into under this section shall have no duty in connection with services provided under such contract other than those duties specified by the terms of the contract.

(c)(1) A contract that is authorized by this section, and transportation under such contract, shall not be subject to this part, and may not be subsequently challenged before the Board or in any court on the grounds that such contract violates a provision of this part.

(2) The exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree. This section does not confer original jurisdiction on

(continued...)

-7-

**II.     Solvay Bill Of Lading And UP-C-35322**

Both parties agree that the Solvay Bill of Lading, and any other contract, terms or conditions incorporated therein, governed the parties' relationship.  See Pretrial Order (Doc. #131) filed June 1, 2011 at 2; see also Plaintiffs' Memorandum Of Law In Support Of Their Motion For Partial Summary Judgment On Defendant's Defenses (Doc. #107) filed April 5, 2011 at 21-22; Doc. #128 at 52-54.  The parties also agree that UP-C-35322 is incorporated into the bill of lading.  Doc. #107 at 21; Doc. #128 at 52; Doc. #131 at 8.  Defendant argues that the Uniform Domestic Straight Bill of Lading, specifically the Uniform Freight Classification 6000-M, and UP Circular 16-E are also incorporated into the bill of lading.  Doc. #128 at 46-48; Doc. #131 at 8.  Defendant further argues that it is entitled to summary judgment because the terms and conditions in these documents bar plaintiffs' claim.  Doc. #131 at 8-9; see Doc. #128 at 48-55.  Plaintiffs argue that neither the Uniform Freight Classification 6000-M nor the UP Circular 16-E is incorporated into the bill of lading.  They also argue that the Carmack Amendment does apply because UP-C-35322 expressly incorporates the Carmack Amendment liability provisions.  Doc. #107 at 20-22.

The Court need not determine whether the Solvay Bill of Lading incorporates the Uniform Freight Classification 6000-M or the UP Circular 16-E because UP-C-35322 is clearly a Section 10709 contract and both parties agree that UP-C-35322 applies.  As noted above, whether the Carmack

---

[6](...continued)
the district courts of the United States based on section 1331 or 1337 of title 28, United States Code.

49 U.S.C. § 11706(a)-(c).

Amendment applies is a matter of contract interpretation.[7]  When determining the meaning of contract

terms, the Court begins with the plain language of the agreement.  Liggatt v. Employers Mut. Cas. Co.,

273 Kan. 915, 921, 46 P.3d 1120, 1125 (2002); Fayard v. Design Cmte. of Homestead Subdivision, 230

P.3d 299, 303-04 (Wyo. 2010).  The interpretation and legal effect of unambiguous contract terms are

matters of law for the Court.  See Shamberg, Johnson & Bergman, Chtd. v. Oliver, 289 Kan. 891, 901-

02, 220 P.2d 333, 339 (2009); Davidson Land Co. v. Davidson, 247 P.3d 67, 71 (Wyo. 2011).

　　　　To support their argument that the Carmack Amendment governs the parties' relationship,

plaintiffs rely solely on the last sentence in the "LIABILITY AND CLAIMS" section of UP-C-35322.

That section states in full as follows:

> Customer agrees not to file any claim for freight loss or damage when the amount of
> proven loss or damage is less than Two Hundred Dollars ($200.00) per railcar (Minimum
> Claim Amount).  If Customer's proven loss or damage is determined to be in excess of
> the Minimum Claim Amount, the Minimum Claim Amount shall be deducted from any
> claim against Railroad for loss or damage to Commodity.  In all other respects, claims
> shall be processed in accordance with 49 U.S.C. Section 11706 and 49 C.F.R. Part 1005.

UP-C-35322, Doc. #128, Ex. 27 at 3 (emphasis added).  Plaintiff argues that because UP-C-35322

requires all claims to be processed in accordance with the Carmack Amendment and certain

implementing regulations, the contract expressly incorporates the Carmack Amendment's liability

---

[7]　　　　Other federal courts which have considered whether a contract properly invokes
Section 10709 have applied the law of the state in which the federal district court sits.  See, e.g.,
Babcock & Wilcox, 557 F.3d at 143; Dow Chem., 8 F. Supp.2d at 941-42.  Here, defendant argues –
and plaintiff does not dispute – that under Kansas choice of law principles, the substantive law of
Wyoming should apply because defendant and Solvay entered into the contract at issue in Wyoming.
　　　　In Kansas, the principle of lex loci contractus determines which law the court will apply.
Stafford v. Crane, 382 F.3d 1175, 1182 (10th Cir. 2004).  In most instances, this means that Kansas
courts apply the substantive law of the state where the contract was made.  Id. (citing Dragon v.
Vanguard Indus., 277 Kan. 776, 784, 89 P.3d 908, 914 (2004)).  Here, the record does not contain
sufficient evidence to determine where defendant and Solvay entered into the agreement for purposes
of lex loci contractus.  Regardless, for purposes of this order, the applicable law of Kansas and
Wyoming are substantially the same.

provisions. The plain language of UP-C-35322 belies plaintiff's argument.

First, the title of UP-C-35322 is "RAIL TRANSPORTATION CONTRACT PURSUANT TO 49 U.S.C. SECTION 10709." UP-C-35322, Doc. #128, Ex. 27 (Doc. #128-28) at 1. The title clearly indicates the parties' intent to be governed by a private contract and not the Carmack Amendment. Second, as defendant argues, the plain language of the liability and claims provision is expressly limited to how "claims shall be <u>processed</u>" – it does not evince any intent to incorporate the Carmack Amendment liability provisions. <u>See</u> Doc. #128 at 52-54. Moreover, the regulations to which the provision refers – 49 C.F.R. Part 1005 – refer exclusively to claims processing, and not liability.[8] Thus, as the District Court for the Southern District of Texas held in a similar case, "it is clear that the intent of the parties was not to bring the entire contract within the parameters fo the Carmack Amendment," but only, for whatever reason, to subject claims "to the specific claim processes described in that Amendment." <u>Dow Chemical</u>, 8 F. Supp.2d at 941-42.

Based on the plain language of UP-C-35322, the Solvay Bill of Lading and UP-C-35322 constitute a Section 10709 contract. Therefore, the terms of defendant's agreement with Solvay govern the parties' relationship under Section 10709 – not the Carmack Amendment. For these reasons the Court sustains defendant's motion for summary judgment. The Court need not, and does not, determine whether defendant's contract with Solvay incorporates terms and conditions beyond the Solvay Bill of

---

[8]    Section 1005.1, which sets forth the applicability of Part 1005, provides that "this part shall govern <u>the processing of claims</u> for loss, damage, injury, or delay to property transported or accepted for transportation" under the Interstate Commerce Act. 49 C.F.R. § 1005.1 (emphasis added). The subsequent provisions create a framework for processing claims, specifically claim filing requirements (49 C.F.R. § 1005.2), acknowledgment of claims (49 C.F.R. § 1005.3), investigation of claims (49 C.F.R. § 1005.4) and time requirements on disposition of claims (49 C.F.R. § 1005.5). Thus, 49 C.F.R. Part 1005 does not govern a rail carriers liability for claims, but merely sets forth a process for filing and processing claims.

Lading and UP-C-35322.  The Court does not address any of defendant's other arguments for summary judgment.  Plaintiffs' only claim is for violation of the Carmack Amendment.  Because the Carmack Amendment does not apply, defendant is entitled to summary judgment.  Accordingly, the Court overrules plaintiffs' motion to the extent that it seeks summary judgment on defendant's Section 10709 defense, and overrules plaintiffs' motion for summary judgment on defendant's other defenses as moot.

**IT IS THEREFORE ORDERED** that Defendant Union Pacific Railroad Company's Motion For Summary Judgment (Doc. #127) filed May 31, 2011 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Partial Summary Judgment On Defendant's Defenses (Doc. #106) filed April 5, 2011 be and hereby is **OVERRULED** to the extent that it pertains to defendant's Section 10709 defense.  The Court overrules plaintiffs' motion for summary judgment on defendant's other defenses as moot.

Dated this 15th day of August, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge